IN RE ESTATE OF R. JEFF JONES.

(Filed 15 April, 1919.)

**Executors and Administrators—Administration—Letters Testamentary— Statutes—Next of Kin—Renunciation.**

The widow of the deceased testator, with a life estate in her husband's personalty, qualified as his administratrix *c. t. a.*, and at her death some of his next of kin in equal degree renounced their right to administer *c. t. a. de bonis non* on his estate in favor of her brother, who was ap-

22—177

pointed by the clerk of the Superior Court. One of the next of kin of the deceased husband, in equal degree of those who had renounced, within six months after the death of the wife, petitioned for the removal of the administrator *c. t. a. d. b. n.* and applied for letters in his stead, which the clerk refused in the exercise of a discretionary power claimed by him to appoint among next of kin in equal degree: *Held*, the renunciation of some of the next of kin in equal degree with the petitioner, who has not renounced (Rev., sec. 11), could not affect his right, and the statutes on the subject of administration, chapter I, subdivisions 2 and 3 of the Revisal, distinguishes between letters of administration and letters testamentary, and applies section 3 to the facts of this case without reference to the six months limitation in section 12, whereunder the petitioner, applying within six months after the death of the administratrix, is entitled to the relief sought by him.

Appeal by respondent, S. P. Williams, from *Lyon, J.,* at the February Term, 1919, of Person.

This is a contest over the appointment of an administrator *d. b. n. c. t. a.* of the estate of R. Jeff Jones.

R. Jeff Jones died in Danville, Va., in 1902, testate, leaving his estate to his wife, Lenora Jones, with the power to sell all his property and invest the proceeds in cotton mill, railroad, or bank stock, she to have the use of it during her lifetime as she wished. She qualified as his administratrix with the will annexed and wound up his estate, converting all the property into Riverside Cotton Mill stock. Mrs. Lenora Jones, said widow, soon thereafter moved to Roxboro, N. C., and resided there until her death on 5 August, 1918. She had kept the stock, amounting to $6,800 (par value), intact, only using the income.

Upon her death her brother, S. P. Williams, qualified as administrator upon her individual estate, and also applied for letters of administration, *c. t. a. de bonis non,* on the estate of R. Jeff Jones on account of said cotton mill stock, which he found in the possession of Mrs. Lenora Jones, belonging to R. Jeff Jones' estate. At that time none of the next of kin of R. Jeff Jones had applied for letters on his estate, the widow having then been dead five months.

The next of kin and distributees of R. Jeff Jones residing in this State were Hallie Jones, Reade Jones, and Mrs. Etta Chambers and Lacy Williams, and are of equal degree of kin to testator. Two nephews, Bernard Williams and Jack Jones, of same kin, are now in military service. The other next of kin are residents of Virginia.

Three of the next of kin, Hallie Jones, Reade Jones, and Mrs. Etta Chambers, renounced their right to qualify and nominated S. P. Williams, the appellant, and asked that he be appointed as administrator, and S. P. Williams, the appellant, was appointed and gave bond.

J. Lacy Williams, the only remaining next of kin residing in the State, then applied for letters and asked that S. P. Williams be removed,

In re Jones.

and upon the hearing the clerk held "that the three next of kin having filed their renunciation and having nominated S. P. Williams, the court, in the exercise of its discretionary powers to select and appoint an administrator from among the applicants of *equal degree of kin or right to administer,* having found S. P. Williams competent and capable to perform the duties of the office," confirmed his appointment and dismissed the petition.

Upon appeal to the court in term his Honor reversed the decision of the clerk and held that J. Lacy Williams had the *right of administration in preference to respondent,* and Williams appealed.

*Luther M. Carlton attorney for appellant.*
*F. O. Carver attorney for appellee.*

ALLEN, J. Two questions are presented by the appeal:

(1) Does the provision in section 12 of the Revisal, giving discretionary power to the clerk to appoint some suitable person administrator, when no person entitled to administer has made application for letters within six months from the death of the decedent, control in an application for the appointment of an administrator *de bonis non cum testamento annexa,* made more than six months after the death of the testator and within six months of the death of the prior administrator or executor?

(2) Does the nomination of a stranger for appointment by two or more of the next of kin, entitled to administer, affect the right of another of the next of kin of equal degree who did not join in the nomination?

The statute, which confers jurisdiction on the clerk to appoint some suitable person administrator when no one entitled to administer has made application for letters within six months from the death of the decedent, is found in the second subdivision of chapter 1 of the Revisal, which is devoted to administration.

This subdivision clearly recognizes the distinction between letters of administration, which issue in case of intestacy, and letters testamentary, issuing when there is a will.

In section three it is provided that "Letters of administration, in case of *intestacy,* shall be granted to the persons entitled thereto and applying for the same in the following order," and then follows the enumeration of the classes.

Section 5. "The clerk shall not issue *letters of administration* or *letters testamentary* to any person who, at the time of appearing to qualify," is disqualified, and then the disqualifications are stated. Section 6 provides that where an executor or any person having a prior right to administer is under the disqualification of nonage or is tem-

porarily absent from the State, "such person is entitled to six months, after coming of age or after his return to the State, in which to make application for *letters testamentary* or *letters of administration.*" Section 10 makes provision for a renunciation by the *executor* and section 11 for a renunciation by those having a *prior right to administer.* (Italics ours.)

It is thus seen that throughout the subdivision the line is clearly marked between "letters of administration" and "letters testamentary" and between the executor and one entitled to administer, and this distinction is retained in sections 12 and 13, the first being entitled "when person entitled deemed to have renounced" and the second "when executor deemed to have renounced." Section 12 provides, "If any person entitled to letters of administration fails or refuses," etc. "If no person entitled to administer shall apply for letters of administration," and was intended to apply to cases of intestacy and not to those where there is a will. A consideration of the next subdivision in the chapter entitled "Will Annexed" strengthens this position because provision is made in section 14 for the appointment of an administrator with the will annexed when there is no executor qualified to act "in the order prescribed in this chapter" and not within the time.

It may be, by analogy, section 12 is broad enough to cover cases where no executor is named in the will, or when one named refuses to qualify, but primarily its purpose is to deal with cases of intestacy, and for the reason that in the vast majority of cases executors are named in wills and qualify, and comparatively few are removed by death or otherwise within six months from the death of the testator, and if it should be held that the limitation of six months applied in such cases it would be a denial of the right to administer to those placed by law in the preferred classes.

We cannot think such was the intent of the General Assembly, and are of opinion that the application for letters having been made within six months from the death of the first administrator with the will annexed, the parties should have their rights determined as regulated by section 3, which prescribes the order in which persons are entitled to administer, without reference to the limitation of six months in section 12.

Who then has the right to administer under the statute? Three of the four in the preferred class, representing a bequest of $100, have renounced and nominated S. P. Williams, a stranger, and the fourth of the class, J. Lacy Williams, representing practically one-fourth of the estate, has made application for appointment and has been appointed, and the controversy is therefore between the nominee of the

majority of the next of kin, who have very little pecuniary interest, and one of the next of kin owning a large part of the estate.

The right to nominate an administrator is recognized in several decisions in our Court, collected and discussed in *Boynton v. Heartt,* 158 N. C., 488, but in none of them has the nomination been approved or sustained when a stranger was nominated by a majority as against one in the preferred class.

The statute gives each of the next of kin in the same class the same right to administer; the interests are frequently antagonistic, as in this case, there may be no community of interest, and if numbers are permitted to control, three of the next of kin, representing a pecuniary interest of one dollar each, could name an administrator as against two entitled to one or ten thousand each.

We see no reason for permitting a majority to deprive another of his right, and the statute, Rev., sec. 11, seems to contemplate that this can only be done by his own act, by renunciation.

In Pennsylvania the register had the power of appointment, and in Stewart's Estate, 189 Pa. St., 72, the Court said of the question now before us: "The discretion vested in the register is limited to a selection from each class entitled in its order, and neither he nor the parties renouncing can pass by one of the children competent to administer and vest the appointment in a stranger. Williams' App., 7 Pa., 259; McClellan's App., 16 Pa., 110."

Again, in *Justice v. Wilkins* (Ill.), 95 N. E., 1026: "Any one of the nephews and nieces in this State, and otherwise qualified, was entitled to be appointed as administrator, and the court might have granted letters to any one or more of them. Could he legally appoint a stranger to the class, nominated by one of these nephews or. nieces, unless the others who were equally entitled to administer waived their rights? We think not. In our judgment the statute is mandatory to appoint one or more of the next of kin residing in the State who were otherwise qualified, unless they waived their rights. *O'Rear v. Crum,* 135 Ill., 394, 25 N. E. 1097; *Judd v. Ross,* 146 Ill., 40, 34 N. E. 631. When any one heir of the class waives the right and nominates another, the one so nominated is not to stand in the place of the others, with equal rights to administer as against the other heirs of the class, unless the person nominating is the only heir of that class. If all of those who appear of the class entitled to administer waive that right and another person is appointed at his, her, or their request, if one of the others of the class who are equally entitled to administer appears 'within sixty days from the death of the intestate' and insists upon his right to administer in person, and if he is a competent person, we are of the opinion that it would be the duty of the court to appoint him; provided, however, in

turning over the estate the court may make all necessary orders for its proper protection and for the compensation of the person theretofore appointed."

"Code Civ. Proc., 1365, in fixing the order in which certain classes of persons are entitled to administer a decedent's estate, provides (subdivision 2) that in the absence of a surviving husband or wife, children shall be appointed. Section 1379 provides that 'administration may be granted to one or more competent persons, although not otherwise entitled to the same, at the written request of the person entitled, filed in the court': *Held,* that where three daughters survived, and one of them applied for administration, she should be appointed, though a competent person nominated by the other two daughters also applied, the court not having any discretion in such case." *In re* Meyers Es. (Cal.), 100 Pac., 712.

The same principle is declared in *Cramer v. Sharp,* 49 N. J. Eq., 558.

We are therefore of opinion his Honor committed no error in holding that J. Lacy Williams is entitled to the appointment as administrator *d. b. n. c. t. a.* in preference to S. P. Williams, a stranger.

No error.